Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7459 | **DATE** | 1/22/2001 |
| **CASE TITLE** | THYRA DAVIS, DOROTHY TIMMS vs. OFFICERS P. TODE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment as to Counts I and II is granted; and Counts III, IV, V, VI, VII, and VIII are dismissed for lack of federal jurisdiction pursuant to Fed.R.Civ.P. 12(h)3). Enter memorandum opinion and order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 26 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 01 JAN 25 PM 5:30 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| THYRA DAVIS AND DOROTHY TIMMS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 99 C 7459 ) |
| OFFICERS P. TODE #21300, et al., | ) The Honorable John W. Darrah ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thyra Davis ("Davis") and Dorothy Timms ("Timms") have filed an eight-count complaint against Chicago Police Department Officers P. Tode ("Tode") and D. Crnjak ("Crnjak"), the City of Chicago ("the City"), Burrell Burns ("Burns"), and Autos, Inc. alleging conspiracy under 42 U.S.C. 1983 (Count I), False Arrest in violation of 42 U.S.C. 1983 (Count II), False Arrest under Illinois law (Count III), Respondeat Superior liability on behalf of the City (Count IV), Abuse of Process (Count V), Common Law Fraud (Count VI), Unauthorized Possession of Title (Count VII), and Alteration and/or Forgery of Title (Count VIII). Defendants Tode and Crnjak have moved for summary judgment on Counts I, II, and III pursuant to FED.R.CIV.P. 56. For the reasons that follow, the Court grants their Motion for Summary Judgment on Counts I, and II and dismisses Counts III, IV, V, VI, VII, and VIII for lack of federal jurisdiction pursuant to FED.R.CIV.P. 12(h)(3).

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c). "One of the

principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986). Thus, although the moving party, on a motion for summary judgment, is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Consequently, the inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). A metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. Nonetheless, the Court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

Considering the undisputed facts from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pls.' 56.1" and "Defs.' 56.1") and accompanying exhibits and drawing all reasonable inferences from the evidence in Plaintiff's favor, the facts, for purposes of

resolving the Motion, are as follows.

On November 20, 1998, Joseph Miller, an employee of Autos Inc., reported the theft[1] of a 1998 Toyota ("the car") to the police phone bank. (Defs.' Ex. A). The staff of the police phone bank then generated a report, which they forwarded to the Chicago Police Department Auto Theft Unit on November 21, 1998. (Defs.' Ex. A). The theft report listed the auto as being stolen from 1300 N. Mason. (Defs.' Ex. A). The theft report listed Autos Inc. as the "Title Holder (Financing Institution)". (Defs.' Ex. A). The vehicle identification number was entered into the L.E.A.D.S. system (Illinois auto tracking system) and the N.C.I.C. (National Crime Bureau Computer). (Defs.' 56.1 ¶ 4). No further investigation occurred until January 5, 1999, when the State of Illinois notified the Auto Theft Unit that someone had applied for a duplicate title to the car which had been reported stolen by Autos Inc. (Defs.' 56.1 ¶ 5).

After this notification was received, Officer Tode of the Auto Theft Unit was assigned to the investigation. (Defs.' 56.1 ¶ 6). Officer Tode began his investigation on January 8, 1999. (Defs.' 56.1 ¶ 7). He reviewed the L.E.A.D.S. message received on the car. (Defs.' 56.1 ¶ 8). The message indicated that Bank One, Wisconsin had applied for a duplicate title as the primary applicant. (Defs.' Ex. B). The message indicated that Marcd [Sic] Chytracek of 2214 N. Division, Plainfield, Illinois, 60544 was the secondary applicant. (Defs.' Ex. B). The message indicated that the duplicate title was to be mailed to Starcrest Inc., 15244 S. Broadway, Harvey, Illinois, 60426. (Defs.' Ex. B). The phone number for Starcrest was listed as "temporary disconnect [Sic]." (Defs.'

---

[1] 625 ILCS 5/4-103 states in relevant part:

>It is a violation of this chapter for: A person not entitled to the possession of a vehicle or essential part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted.

56.1 ¶ 9, Defs.' Ex. B).

Officer Tode then contacted Autos Inc. and spoke to its owner, Burrell Burns. (Defs.' 56.1 ¶ 10). Tode had had no previous contact with Burns. (Defs.' 56.1 ¶ 11). When Tode told Burns about the application for the title, Burns recognized the name Starcrest Inc. and told Tode that the person who had applied for the duplicate title was Plaintiff Davis. (Defs.' 56.1 ¶ 13). Burns then told Tode the alleged circumstances of the purchase and sale of the car which he had reported stolen.[2] (Defs.' 56.1 ¶ 14). Burns told Tode that Davis had wanted to purchase the car at issue at an auction but did not have the funds to do so. (Defs.' 56.1 ¶ 15). Burns claimed that Davis had told him that she had a purchaser for the car. (Defs.' 56.1 ¶ 15). Burns told Tode that he (Burns) had obtained a bank draft for $18,445 to purchase the car and sent an associate to the auction for this purpose. (Defs.' 56.1 ¶ 15). Burns explained that the intended purchaser was Dorothy Timms. (Defs.' 56.1 ¶ 15). Burns told Tode that the bank draft for $18,445 was then tendered to the auction, and the car was purchased in Autos Inc.'s name. (Defs.' 56.1 ¶ 15). Burns told Tode that the finance company canceled its financing after Thyra Davis notified them that the sale had been fraudulent. (Defs.' 56.1 ¶ 23, Defs.' Ex. C). The draft which had been transferred to Burns for payment bounced. (Defs.' 56.1 ¶ 23, Defs.' Ex. C). Burns alleged that the car was his since the sale to a third-party had not been completed. (Defs.' Ex. H).

Tode then requested from Burns a copy of all the documents he had concerning the car. (Defs.' 56.1 ¶ 16). Among the documents Burns sent to Tode was a copy of the back of the title,

---

[2] Although Plaintiff denies the truth of Burns' alleged statements to Tode, she does not deny these statements were made. When considering whether an officer had probable cause to arrest, the Court considers the facts as reasonably known to the officer.

which indicated that Autos Inc. was given a right of subrogation superior to the right of Starcrest. (Defs.' 56.1 ¶ 18). The other documents Burns sent to Tode included: a copy of the check with which Autos Inc. paid for the car (Defs.' Ex. D), a copy of the front of the title, a copy of the draft for payment to Autos Inc. which was dishonored, and a copy of the Bill of Sale to Ms. Timms (Defs.' Ex. G). The bill of sale listed Dorothy Timms as purchasing the car from Autos, Inc. (Defs.' Ex. F).

On January 15, 1999, Officers Tode and Crnjak went to 1300 N. Mason, the home address of Dorothy Timms, in order to locate the car. (Defs.' 56.1 ¶ 24). When Officers Tode and Crnjak arrived there, the car was nowhere to be found. (Defs.' 56.1 ¶ 25). However, another car with a dealer's registration plate was parked directly in front of Ms. Timms' address. (Defs.' 56.1 ¶ 25). Officers Tode and Crnjak checked the registration and discovered that this car was registered to Starcrest, Inc.,15244 S. Broadway in Harvey, Illinois. (Defs.' 56.1 ¶ 26).

When the officers went to 15244 S. Broadway in Harvey, Illinois, Thyra Davis answered the door. (Defs.' 56.1 ¶ 27). They identified themselves as Chicago Police officers and explained they were investigating a car which had been reported stolen. (Defs.' 56.1 ¶ 28). Davis admitted that she had the car. (Defs.' 56.1 ¶ 29). The parties dispute what happened next. Defendants claim that Plaintiff had no documents relating to her ownership of the vehicle. (Defs.' 56.1 ¶ 30). Plaintiff claims that she immediately showed the officers a "Bill of Sale - Memorandum of Installment Sale" (Pls.' Ex. A) and a "Certificate of Title" (Pls.' Ex. B). (Pls.' 56.1 ¶ 17, 18). Plaintiff further claims that she showed the officers her name on the back of the "Certificate of Title". (Pls.' 56.1 ¶ 18). She also claims that she showed the officers a "statement" to Dorothy Timms from Starcrest Inc., which contained the vehicle's VIN number, date of sale, and amount of purchase price. (Pls.' 56.1 ¶ 19).

In Davis' affidavit, she claims that, when the Officers visited her apartment, she pointed out her name on the back of the "Certificate of Title". (Pls.' Aff. ¶ 18). However, in her Complaint, she alleged that she had not received title to the vehicle, because it had been received by Burns. (Compl. ¶ 15). She also stated, "Ms. Timms maintained possession of the vehicle for approximately one-week before Davis resumed possession of the vehicle since [Davis] could not give title to Timms." (Compl. ¶ 16). For purposes of this Motion for Summary Judgment, the Court concludes that Plaintiff Davis did not have title at the time she was arrested. The Court does not resolve the disputed question of fact regarding what documents Davis presented to the Defendant Officers.

Officers Tode and Crnjak then called the Harvey Police Department, and officers were sent to Plaintiff's address. (Defs.' 56.1 ¶ 31). After discussing the matter with officers from the Harvey Police Department, Plaintiff drove the car out of the garage and parked it on the street. (Defs.' 56.1 ¶ 32). After Tode, Crnjak, and the Harvey Police checked the vehicle identification number and confirmed that it was the stolen car, Tode and Crnjak placed Plaintiff under arrest and transported her to the Auto Theft Unit, which is located at 111 S. State St., Chicago, for further processing. (Defs.' 56.1 ¶ 34). During the trip back to the Auto Theft Unit, Officer Tode called Burns to notify him that they had recovered the car and that an arrest had been made. (Defs.' 56.1 ¶ 36). Officer Tode informed Burns that he needed to go to the Auto theft Unit to sign a complaint concerning the car. (Defs.' 56.1 ¶ 36). Burns then completed a written complaint against Thyra Davis for unlawful trespass to a motor vehicle. (Defs.' Ex. I). An additional disputed issue of material fact concerns an alleged statement made by Tode to Davis during the trip back to the Auto Theft Unit. Davis claims that Tode told her that "this wasn't an auto theft case". (Pls.' 56.1 ¶ 24). Defendants deny this statement was made. In considering this Motion, the Court assumes the statement was made.

## DISCUSSION

*Count I: Conspiracy*

In Count I, Plaintiff sued Tode, Crnjak, and Burns for conspiring to arrest her without probable cause in violation of 42. U.S.C. 1983.

Plaintiff has produced no evidence from which a reasonable jury could conclude that Officers Tode and Crnjak conspired with Burns to arrest her without probable cause. "[B]are allegations are insufficient to demonstrate an agreement among the defendants to deprive [Plaintiff] of a constitutional right." *Spiegel v. Cortese,* 196 F.3d 717, 726-27 (7th Cir. 2000)(citing *Kunik v. Racine County,* 946 F.2d 1574, 1580 (7th Cir. 1991)).

To prove a claim of conspiracy to violate constitutional rights, a plaintiff must show either the existence of an agreement or, if the agreement is not overt, "the alleged acts must be sufficient to raise the inference of mutual understanding" (i.e., the acts performed by the members of a conspiracy "are unlikely to have been undertaken without an agreement"). *Kunik v. Racine County, Wisconsin,* 946 F.2d 1574, 1580 (7th Cir. 1991). Here, Plaintiff has failed to provide any evidence of an illicit agreement. Furthermore, Plaintiff has not shown that a reasonable jury could infer the existence of an agreement from the actions of the two officers. The Plaintiff has shown no evidence that the officers communicated with Burns prior to the discussion of the L.E.A.D.S. message of January 5, 1999. The Plaintiff has not shown that the two communications between the officers and Burns were in any way out of the ordinary. According to the record as it stands, Officer Tode contacted Burns once when the L.E.A.D.S. message came through and again to notify him that an arrest had been made so that he would file a formal complaint. Neither communication can reasonably form the basis for an inference of conspiracy.

Plaintiff further argues that the fact that Chicago Police Officers were operating outside of Chicago supports the inference of a conspiracy, questioning "how usual is it for a Chicago Police Unit to travel outside of its municipal jurisdiction to make an arrest for an automobile theft?" (Pl. Res. 3). However, absent citation to authority establishing the proper scope of the Chicago Police Department's jurisdiction, the Court is not in a position to determine whether this conduct was out of the ordinary. Therefore, this Court will not draw any inference from this fact. However, the Court does note that the fact that Defendants contacted the Harvey Police Department before proceeding with the arrest draws the allegation of conspiracy into serious doubt.

Plaintiff has proffered no evidence of conspiracy other than the allegations in her self-serving affidavit.[3] "Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O'Lakes*, 987 F.2d 1293, 1295 (7th Cir. 1993). The Court grants Defendants' Motion for Summary Judgment as to Count I.

*Count II: False Arrest*

In Count II, Plaintiff alleges Tode and Crnjak arrested her without probable cause in violation of 42 U.S.C. 1983. The Court need not reach the issue of probable cause since it finds that the officers' decision to arrest Plaintiff is protected by qualified immunity.

"Because qualified immunity protects all 'but the plainly incompetent or those who knowingly violate the law,' a law enforcement officer will be immune to claims based on an arrest without probable cause unless 'it is obvious that no reasonably competent officer' would have

---

[3] Plaintiff has not identified any contradictions or inconsistencies in the officers' affidavits which would support an inference of conspiracy. Furthermore, Plaintiff has not deposed either Officers Tode or Crnjak or any of the officers from the Harvey Police Force who were present at the time of the arrest.

believed that there was probable cause to arrest." *Spiegel v. Cortese*, 196 F.3d 717, 722 (7th Cir. 2000)(citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed..2d 271 (1986)). The Seventh Circuit stated in *Marks v. Carmody*, - - F.3d - -, No. 00-2037, slip. op. at 5 (7th Cir. Dec 12, 2000), "[t]he question ... is ... whether a reasonable officer, knowing what these two knew, would have known that the law as applied to these circumstances clearly established that an arrest would be unlawful for lack of probable cause." The Seventh Circuit further observed that "[t]his standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violated the law." *Id.* (citation omitted). In assessing this issue, the Court is to ask whether a reasonable police officer could have believed (even if mistakenly) that probable cause existed; in other words, whether there was, what the Seventh Circuit and other courts have referred to as, "arguable probable cause." *See e.g., Humphrey v. Starzak*, 148 F.3d 719, 725 (7th Cir. 1998).

Viewing the facts in this case as well as the Seventh Circuit's decisions in *Bledsoe v. City of Chicago*, 124 F.3d 203, 1997 WL 374808 (7th Cir. 1997) and *Spiegel v. Cortese*, 196 F.3d 717, 722 (7th Cir. 2000), this Court finds that Officers Tode and Crnjak's conduct was protected under the doctrine of qualified immunity, when they concluded that probable cause existed for Davis' arrest. Davis was in possession of a car for which payment had been stopped. The police had received a report that the car had been stolen. "As long as a reasonably credible witness or victim informs the police that someone has committed or is committing a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent." *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). At the time of her arrest, Plaintiff Davis was in possession of a car: (1) which had been reported stolen, (2) for which a duplicate title had been applied, and (3) for which she did not have

title. An officer who knew what Defendants Tode and Crnjak knew, may have reasonably believed that Plaintiff Davis had committed a crime. These facts invoke the doctrine of qualified immunity.

In making its decision to afford qualified immunity to Defendants Tode and Crnjak, the Court examined closely the Seventh Circuit's recent decision in *Marks v. Carmody*, -- F.3d -- , No. 00-2037, slip. op. at 7 (7th Cir. Dec 12, 2000). In *Marks*, the Court considered the arrest of a Plaintiff for bouncing a check to a company he himself had incorporated. *Id.* at 3,4. In affirming the District Court's finding of qualified immunity, the Seventh Circuit observed:

> The fact that Marks had alerted the officers to possible defenses he might have had to the crime does not change this result. Thus, for instance, the officers were not required to view the fact that Marks made out the check to a company that he himself had incorporated as something definitively negating the violation. Nor did they need to accept as established the evidence Marks had proffered that tended to show that he did not act with the requisite intent to defraud the Bechars. Issues of mental state and credibility are for judges and juries to decide.

Although Plaintiff claims that it should have been obvious that she didn't steal the car, she has failed to show that it was unreasonable for Defendants to have believed that a crime had been committed.

After reviewing the facts in this case, the Court finds that the officers' decision is protected by qualified immunity and therefore grants Defendants' Motion for Summary Judgment on Count II.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment as to Counts I and II is granted; and Counts III, IV, V, VI, VII, and VIII are dismissed for lack of federal jurisdiction pursuant to FED.R.CIV.P. 12(h)(3).

**IT IS SO ORDERED.**

John W. Darrah, Judge

United States District Court

Date: January 22, 2001